## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | JOINTLY ADMINISTERED UNDER BKY 17-42726 Chapter 7 |

| | |
|---|---|
| WYNIT Distribution, LLC, | BKY 17-42726 |
| WD Navarre Distribution, LLC, | BKY 17-42728 |
| WD Encore Software, LLC, | BKY 17-42729 |
| WD Navarre Holdings, LLC, | BKY 17-32864 |
| WD Navarre Digital Services, LLC, | BKY 17-32865 |
| WYNIT Holdings, Inc., | BKY 17-32866 |
| WD Navarre Canada, ULC, | BKY 17-32867 |

Debtors.

| | |
|---|---|
| Nauni Manty, as Chapter 7 Trustee of the Bankruptcy Estate of the above Debtors, | Adv. No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Elevation Lab, Inc., | |
| Defendant. | |

Nauni Manty, as Chapter 7 trustee of the Bankruptcy Estate of the Debtors (the "Plaintiff"), for her complaint against Elevation Lab, Inc. (the "Defendant"), avers as follows:

1.     The Defendant is a Oregon corporation with its principal place of business located at 237 Northeast 10th Avenue, Portland, Oregon 97232.

2.     The petitions commencing the above cases under chapter 11 were filed on September 8, 2017. The cases were converted to cases under chapter 7 on January 17, 2018. The Plaintiff was appointed as the chapter 7 trustee on January 19, 2018.

3.     This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) as an action arising in or related to a case under title 11. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), and (O).

4.     This complaint is filed under Fed. R. Bankr. P. 7001(1). This adversary proceeding arises under 11 U.S.C. §§ 323, 502, 542, 543 and other applicable law.

5.     The Plaintiff consents to the bankruptcy court's entry of final orders and judgment in this adversary proceeding.

## FACTUAL ALLEGATIONS

6.     WYNIT Distribution, LLC ("WYNIT Distribution") and the Defendant are parties to that certain Master Business Supplier Agreement dated June 11, 2015, including all schedules, exhibits and addendums (together, the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit A and incorporated herein.

7.     Pursuant to the Agreement, the Defendant, among other things, appointed WYNIT Distribution as an authorized distributor with the right to acquire and to market and sell certain products (the "Products").

8.     The Agreement also provides for offsets or credits associated with the Products that may, for example, be returned or defective.

9.     The Debtors have provided information to the Plaintiff that shows the amount due under the Agreement is $38,917.26 (plus any interest, charges, fees, and expenses, the "Amount Due"). A true and correct copy of the statement of account is attached as Exhibit B and incorporated herein.

10.     By letter dated February 20, 2018, the Plaintiff demanded that the Defendant pay the Amount Due within 21 days, but the Defendant failed to do so.

## Count I
## Breach of Contract

11.     The Plaintiff hereby incorporates all paragraphs above.

12.     Pursuant to the Agreement, the Defendant is obligated to pay WYNIT Distribution for, among other things, refunds, price protection credits, non-compliance charges, advertising and marketing funds and other credits owed to WYNIT Distribution.

13.     The Defendant owes WYNIT Distribution the Amount Due.

14.     The Defendant has failed and refused, and continues to fail and refuse, to pay the Amount Due to WYNIT Distribution. As a result, the Defendant is in breach of the Agreement.

15.     The Plaintiff requests that the Court enter judgment against the Defendant and in favor of the Plaintiff for the Amount Due.

## Count II
## Account Stated

16.     The Plaintiff hereby incorporates all paragraphs above.

17.     The Defendant received invoices stating the amounts due.

18.     The Defendant did not object to the invoices or amounts due therein within a reasonable amount of time.

19.     As a result, the Plaintiff is entitled to judgment in the Amount Due based on an account stated.

## Count III
## Turnover of Assets of the Estate (11 U.S.C. §§ 542 and 543)

20.     The Plaintiff hereby incorporates all paragraphs above.

21.     The Amount Due constitutes property of WYNIT Distribution.

22.     Section 542 and 543 of the Bankruptcy Code requires that the Defendant turnover or deliver such property to the Plaintiff and account for property or the value of such property.

3

23.     The Defendant is in possession of property of the debtors' estate, and for which there has been no turnover or accounting.

24.     The Plaintiff requests that the Court order the Defendant to turn over the estate property and provide an accounting to the Plaintiff.

**Count IV**
**Disallowance of Claim Pursuant to 11 U.S.C. § 502(d)**

25.     The Plaintiff hereby incorporates all paragraphs above.

26.     By virtue of 11 U.S.C. § 502(d), the court is required to disallow any claims the Defendant holds against the debtors until or unless the Defendant has paid the Plaintiff the amount the Defendant is liable to the Plaintiff under 11 U.S.C. §§ 542 and 543.

**WHEREFORE**, the Plaintiff demands judgment against the Defendant as follows:

(a)     Judgment in an amount equal to the Amount Due in favor of the Plaintiff and against the Defendant;

(b)     Judgment in favor of the Plaintiff and against the Defendant directing that the Amount Due be turned over to the Plaintiff;

(c)     Judgment against the Defendant in favor of the Plaintiff for damages;

(d)     Sustaining the Plaintiff's objection to any claims held or asserted by the Defendant in their entirety;

(e)     For pre-trial and post-trial interest as allowed by law and the Agreement;

(f)     For the Plaintiff's costs and disbursements herein; and

(g)     For such other and further relief as the Court deems just and equitable.

Dated: April 2, 2018                    MANTY & ASSOCIATES, P.A.

                                        By:    */e/ Jacqueline J. Williams*
                                               Nauni Jo Manty (#230352)
                                               Dennis O'Brien (#80469)
                                               Christopher Camardello (#284798)
                                               Jacqueline J. Williams (#386611)
                                               Mary Sieling (#389893)
                                               401 Second Avenue North, Suite 400
                                               Minneapolis, MN 55401
                                               Phone: (612) 465-0990
                                               Email: jwilliams@mantylaw.com

                                               *Attorneys for the Trustee*

## <u>VERIFICATION</u>

I, Nauni Jo Manty, trustee and plaintiff named in the complaint, declare under penalty of perjury that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief.

Dated: April 2, 2018

_____

Nauni Jo Manty, Trustee

**WYNIT DISTRIBUTION, LLC
AND
ELEVATION LAB, INC.**

**MASTER BUSINESS SUPPLIER AGREEMENT**

This Master Business Supplier Agreement ("**Agreement**") is made and entered into as of the 11th day of June, 2015 (the "**Effective Date**") by and between:

**WYNIT Distribution, LLC,** a New York limited liability company with its principal place of business located at 5801 East Taft Road, North Syracuse, New York 13212 along with its subsidiaries and its affiliates ("**WYNIT**"); and

**Elevation Lab, Inc.** an Oregon corporation having principal offices located at 237 NE 10th Avenue, Portland, Oregon, 97232 ("**Supplier**").

This Agreement consists of the following Master Terms and Conditions and one or more Business Transaction Schedules which describes the exact nature of the business entered into by the applicable WYNIT entity and Supplier and which when executed by the applicable parties is incorporated into this Agreement.

1. **TERM.**

   1.1 <u>Initial Term</u>. The initial term of this Agreement is for a period of twelve (12) full months commencing on the Effective Date. The initial term and any renewal term, as provided for below, are individually and collectively referred to as the "**Term.**"

   1.2 <u>Automatic Renewal</u>. After the initial or then current renewal term, this Agreement shall be automatically renewed for successive one (1) year periods, unless either party gives the other written notice, at least ninety (90) days prior to the expiration of the then current Term that it does not desire that the Agreement continue. If such notice is given, the Agreement shall terminate at the end of the then current Term, provided that, if Supplier's account is in a debit balance, WYNIT, at its option, may extend the Agreement for a period equal to the duration of time until the debit balance is extinguished or paid by Supplier.

2. **TERMINATION.**

   2.1 <u>Early Termination</u>. This Agreement is subject to immediate termination if: (i) Supplier is involved in any voluntary or involuntary bankruptcy proceeding or any other proceeding concerning Supplier's insolvency, dissolution, cessation of operations, reorganization or indebtedness or the like, and such proceeding is not dismissed within ninety (90) days of petition filing; (ii) Supplier becomes insolvent or is unable to pay its debts in the ordinary course of business or makes an assignment for the benefit of its creditors; or (iii) Supplier ceases business operations.

   2.2 <u>Termination for Convenience</u>. After the initial term, either party may terminate this Agreement at any time for any reason upon ninety (90) day prior written notice of termination given to the other party.

   2.3 <u>Termination for Cause</u>.   In addition to any other rights or remedies which may be available at law or in equity, either party may terminate this Agreement for cause upon the material breach by the other party of the terms of this Agreement, and the failure of such other party to cure such breach within thirty (30) days of written notification of such material breach.

   2.4 <u>Effect of Termination</u>. Upon the expiration or termination of this Agreement, WYNIT shall: (i) cease its efforts to promote the sale of the Products other than with regard to any existing Products in inventory; (ii) cease its use of Supplier 's Trademarks other than with regard to any existing Products in inventory; (iii) discontinue making any statements or taking any actions that might cause third parties to infer that any business relationship

wynit
nnnnnnnn nnnnnnn

**EXHIBIT A**

continues to exist between the Parties other than with regard to any existing Products in inventory; and (iv) destroy with certification thereof or return to Supplier, at Supplier's expense, any and all promotional material and other property of Supplier other than necessary to market and sell any existing Products in inventory.

2.5    Survival. The terms, provisions, representations and warranties in this Agreement shall survive the expiration or termination of this Agreement where such survival is necessary to effectuate the intent of such terms, provisions, representations and warranties.

3.    **AUTHORITY.**

3.1    Authority.  Each party represents and warrants that: (i) it has the full power and authority to execute and deliver this Agreement; (ii) this Agreement constitutes its legal, valid and binding obligation; (iii) this Agreement is enforceable in accordance with its terms; and (iv) no other consent, approval or authorization of any governmental authority or any third party is required in connection with the execution and delivery of this Agreement, or the carrying out, or performance of any of the transactions required or contemplated by this Agreement or, if required, such consent, approval, order or authorization has been obtained prior to the date hereof.

4.    **LIMITATION OF LIABILITY.**

4.1    **Limitation of Liability.  Neither party, nor any of its directors, officers, or employees, shall be liable to the other for any special, indirect, consequential or incidental damages, including, but not limited to, lost profits, however caused.  This limitation shall apply even if such party has been advised of the possibility of such damages or the damages were otherwise foreseeable.  This limitation shall not apply to third party claims for which there is an indemnification obligation.**

5.    **INDEMNIFICATION PROCEDURES.**

5.1    Indemnification Procedure.  The party seeking indemnification (the "**Indemnified Party**") will notify the other party (the "**Indemnifying Party**") of any claim subject to an indemnification obligation and will cooperate with and provide reasonable assistance to the Indemnifying Party (at the Indemnifying Party's expense) in the defense or settlement of any claim, provided that the Indemnified Party may, at its own expense, retain separate representation.  The Indemnifying Party has the right to control the defense or settlement of any claim, provided, however, that Indemnifying Party will not enter into any compromise or settlement which does not include a complete release of all claims against the Indemnified Party regarding the matter which is the subject of the claim.

6.    **CONFIDENTIALITY.**

6.1    Confidential Information.  Supplier and WYNIT recognize that the terms of this Agreement and the information provided to the other party pursuant to this Agreement is confidential and each party will take reasonable steps to protect such confidential information.

7.    **FORCE MAJEURE.**

7.1    Force Majeure.  WYNIT shall not be liable to Supplier for a delay or failure to comply with the terms of this Agreement if such delay or failure results from causes beyond its reasonable control.  Such causes may include, without limitation, acts of God or public enemy, fires or other catastrophes, telecommunications failures, equipment failures, power failures, labor disputes, strikes, delays in transportation, riots, war, governmental regulations, or problems experienced by WYNIT as a result of any third party's computer software or hardware (an "**Event of Force Majeure**").  WYNIT will give Supplier prompt notice of any Event of Force Majeure that may cause delay or non-performance

**EXHIBIT A**

hereunder and will use diligent efforts to resume performance excused by such delay.

**8.    RIGHT OF OFFSET.**

8.1    <u>Right of Offset.</u>  WYNIT shall have the right to net any receivable owed to WYNIT by Supplier under any Business Transaction Schedule attached to this Agreement, or hereafter incorporated into this Agreement, against any payable owed by WYNIT to Supplier under any other Business Transaction Schedule attached to this Agreement, or hereafter incorporated into this Agreement.

**9.    GENERAL.**

9.1    <u>Governing Law.</u>  This Agreement and the rights and obligations of the parties hereunder will be governed by the laws of the State of New York, without regard to its choice of law provisions.  The parties agree that the state or federal courts located in Onondaga County, New York have sole and exclusive jurisdiction and venue over any action relating to this Agreement and the parties hereby consent to the jurisdiction of such courts.  In the event of a dispute related to this Agreement, the prevailing party is entitled to recover its costs and reasonable attorneys' fees.

9.2    <u>Subsidiaries and / or Affiliates.</u> WYNIT Distribution, LLC and any of its Subsidiaries and / or its Affiliates are incorporated hereto by reference. Any WYNIT Subsidiary and / or Affiliate is defined as a legal entity directly or indirectly owned by WYNIT, but any such legal entity shall only be considered a Subsidiary and / or an Affiliate of WYNIT as long as such direct or indirect ownership exists. For these purposes, an entity shall be treated as being controlled by WYNIT or under common control with WYNIT. WYNIT may identify its Subsidiaries and / or Affiliates in any Schedules, Addendums and Riders attached hereto and incorporated by reference to this Agreement.

9.3    <u>Assignment.</u>  This Agreement may not be assigned by either party, without prior mutual agreement. Notwithstanding the foregoing either party, by giving written notice to the other, may make any such assignment to a subsidiary, other affiliated company or any company purchasing substantially all of its assets.  The provisions, rights and obligations of this Agreement are binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Any permitted assign of Supplier must execute an assignment and assumption agreement reasonably acceptable to WYNIT.

9.4    <u>Severability.</u>  If any provision of this Agreement is held invalid or unenforceable by a court of competent jurisdiction, the invalid or unenforceable part or provision will be deemed replaced with a provision which accomplishes to the extent possible and lawful the original purpose and intent of such provision, and the remainder of the Agreement continues unaffected and in full force and effect.

9.5    <u>Waiver.</u>  No waiver of any provision or default under this Agreement will affect the right of either party to enforce such provision or to exercise any right or remedy in the event of any other default, whether or not similar, at a later time. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which a party would otherwise have.

9.6    <u>Entire Agreement.</u>  This Agreement and any Schedules, Riders, Exhibits or Addenda attached hereto and hereby or hereafter incorporated herein constitute the entire agreement and understanding between the parties concerning the subject matter hereof and supersede all prior and contemporaneous representations, agreements, understandings, proposals and communications between the parties, whether written or oral. Both parties agree that to the extent there are any terms contained in any invoices or purchase orders issued pursuant to the terms of this Agreement that vary and conflict with the terms of this Agreement, then the terms set forth in this Agreement will govern.

wynit

**<u>EXHIBIT A</u>**

9.7 <u>Modification and Amendment</u>.  This Agreement may not be modified, amended, rescinded, waived or otherwise changed except pursuant to a written consent, amendment or other agreement signed by a duly authorized corporate officer of each party.   Such written approvals, consents, modifications and amendments may be reproduced and transmitted to the other party electronically, by facsimile or email attachment.

9.8 <u>Notice.</u>  All written notices between the parties shall be deemed to have been given if personally delivered or sent by nationally recognized overnight mail (such as UPS, Fed Ex or DHL), to the address specified below:

| <u>Supplier:</u> | <u>WYNIT</u> |
|---|---|
| Elevation Lab, Inc. | WYNIT Distribution, LLC |
| 237 NE 10th Avenue | 5801 East Taft Road |
| | |
| Portland, Oregon, 97232 | North Syracuse, New York 13212 |
| Attention: Tom Floyd, COO | Attention: Legal Affairs |

A notice shall be deemed complete when said notice is deposited by sender in accordance with the method of delivery as stated above, and the date of such mailing shall constitute the date of notice.

9.9 <u>Execution in Counterparts</u>.  This Agreement, and any Schedule, Rider, Exhibit or Addendum incorporated herein may be executed in any number of counterparts which, when taken together, constitute one and the same instrument.  The parties acknowledge that an executed copy (including, without limitation, copies of any signatures) that are reproduced and transmitted to the other party electronically, by facsimile, email attachment, or otherwise, are equivalent to original documents for all purposes.

The parties, by the actions of their authorized representatives, have executed this Agreement as of the Effective Date.

**ELEVATION LAB, INC.**

By:_____

Name: Tom Floyd

Title: Secretary

Date: June 11, 2015

**WYNIT DISTRIBUTION, LLC**

By:_____

Name: Randy Saputo

Title: Chief Financial Officer

Date:   June 11, 2015

**EXHIBIT A**

## BUSINESS TRANSACTION SCHEDULE A

### DISTRIBUTION AGREEMENT
### TO THE
### MASTER BUSINESS SUPPLIER AGREEMENT
### BETWEEN
### WYNIT DISTRIBUTION, LLC
### AND
### ELEVATION LAB, INC. ("SUPPLIER")

The purpose of this Business Transaction Schedule A, Distribution Agreement to the Master Business Supplier Agreement dated June 11, 2015 (**"Distribution Agreement"**) is to set forth the agreement of the parties with respect to the terms and conditions under which WYNIT will distribute certain Products manufactured or marketed by Supplier.

1.  **APPOINTMENT.**

    1.1    Supplier appoints WYNIT as an authorized distributor with the non-exclusive right, in its sole discretion, to acquire and to market and sell products to customers of WYNIT in the Territory.  For the purpose of this Distribution Agreement: (i) **"Product(s)"** means the consumer electronics, peripherals and/or entertainment accessory products that are manufactured or marketed by Supplier and provided to WYNIT for distribution; (ii) **"Territory"** means distribution in the United States (including territories and possessions) and Canada and distribution through the United States military exchange world-wide retail system; and (iii) **"Authorized Dealers"** – A list of dealers, as agreed between the Parties that WYNIT shall be permitted to provide  Products to, and who shall be authorized to resell the Products; and (iv) **"Gold Resellers"** - Authorized Dealers  who carry a strategic value to the growth and positioning of the Products in one or more channels.  Gold Resellers shall be designated by WYNIT and shall include, but not be limited to, the Parties designated in Exhibit A annexed hereto. (collectively **"Customers"**).  Gold Resellers shall be agreed in writing between the Parties from time to time and shall be incorporated into this Distribution Agreement by reference.

    1.2    WYNIT is not required by this Distribution Agreement to acquire and market any minimum quantity or amount of Products.

2.  **ORDERS, SHIPMENT AND DELIVERY.**

    2.1    Orders.  WYNIT will order Products from Supplier in writing (which includes facsimile or electronic mail transmission), or via EDI, signed or transmitted by an authorized representative of WYNIT (the **"Purchase Order"** or **"P.O."**).  All orders are subject to acceptance by Supplier, and WYNIT may cancel all or part of any order prior to the date of shipment.

    2.2    Order Placement and Confirmation. Upon WYNIT ordering Products from Supplier through a Purchase Order, Supplier will have the option to accept, reject or modify the Purchase Order within forty-eight (48) hours of receipt from WYNIT. If Supplier does not respond within the forty-eight (48) hour time period, the Purchase Order will be deemed to be accepted by Supplier. In the event that WYNIT incurs charges from any Authorized Customer due to Supplier not meeting delivery dates and / or quantities through an accepted Purchase Order, the charges shall pass through from the Authorized Customer to the Supplier.

    2.3    Shipment and Delivery.  Supplier will specify the shipping schedule in its acknowledgment of the P.O and will use commercially reasonable efforts to meet the acknowledged delivery schedule.  Delivery terms are freight pre-paid by Supplier and delivered duty paid, DDP to: 10300 Sanden Drive Suite 200, Dallas, Texas 75238 USA, Incoterms® 2010, 4655 East Shelby Drive, Memphis, Tennessee 38118 USA, Incoterms® 2010 or 4670 Aircenter Circle, Reno, Nevada USA, Incoterms® 2010, such destination designated on the applicable P.O. Supplier bears the risk of loss or damage to Products in transit.  Risk of loss and title to Products will pass to WYNIT only upon receipt by WYNIT.  If applicable, Supplier shall be responsible for payment of all importation duties and taxes and in no event shall WYNIT be designated the importer of record.

    2.4    Routing and Packaging Compliance. Supplier hereby agrees to abide by WYNIT's routing and packaging guidelines (the **"Supply Guidelines"**) set forth at: Routing and Packaging Compliance and hereby incorporated into this Agreement.  Failure of Supplier to adhere to said instructions will result in Supplier being charged back the non-compliance charges set forth in the Supply Guidelines.

**3.    PAYMENT AND PRICING.**

3.1     Payment Terms.  For terms purchases, WYNIT will pay Supplier1% thirty (30) days/ net sixty (60) days from the receipt of the Products and subject to deductions for credits and chargebacks due pursuant to Section 3.6.  Notwithstanding the foregoing, Supplier acknowledges and agrees that all payments are subject to the payment holdback described below in Section 3.2.

3.2     Inventory Holdback.  WYNIT will hold back from payments due an amount equal to one hundred percent (100%) of the aggregate value of the on-hand inventory of Products held by WYNIT and its Customers. WYNIT reserves the right to withhold additional amounts from payments due in good faith in order to avoid Supplier's account going into a debit balance and/or to cover marketing/advertising and other Customer pass through funds that, at the time of WYNIT's payment to Supplier, have been pre-approved by Supplier but have not yet been credited to the Customer in WYNIT's accounting system.

3.3     Price Protection.  In the event that Supplier reduces the price of any of its Products, or offers the Products at a lower price to any other party within the same class of trade, i.e. a distributor to the retail trade purchasing in similar quantities, including raising any discount offered, Supplier will immediately adjust its pricing charged to WYNIT for the difference between the invoice price charged to WYNIT and the reduced price for each unit of Product: (i) on order and / or held in inventory by WYNIT or its Customers on the date that the reduced price is first offered; or (ii)  in transit to WYNIT or to its Customers and invoiced within five (5) working days before or after the price protection notification.

3.4     Price Increases. The price charged to WYNIT by Supplier for any Product (current or future releases) may only be increased by sixty (60) days advance written notice given by Supplier to WYNIT.  In the event that Supplier raises the list price of a Product, all orders for such Product placed prior to the effective date of the price increase will be invoiced at the lower price.

3.5     Resale Prices.  The selling prices, discounts, payment terms and return privileges offered by WYNIT to its Customers will be determined by WYNIT in its sole and exclusive discretion.  Supplier will make no pricing commitments to any Customers or other third parties which would otherwise obligate WYNIT.

3.6     Credits.  Any credits due WYNIT, including, but not limited to, price protection credits, return credits, non-compliance charges and approved advertising or marketing funds, will be handled by the issuance of chargebacks by WYNIT against any invoice amounts otherwise due Supplier prior to the issuance of a matching credit memo by Supplier.  However, in order for the accounts to reconcile, WYNIT expects Supplier to provide a matching credit memo for such chargebacks within fifteen (15) days of receipt of supporting documentation from WYNIT.  In case there is a balance due WYNIT, then WYNIT will be entitled, at its option, to withhold future payments due Supplier until such debit balance is extinguished or require Supplier to issue a check to WYNIT within five (5) days to clear the debit balance.  In case of a disputed account balance, both parties will make a good faith effort to reconcile the account within twenty-one (21) days.

3.7     Assignment of Accounts.  Supplier shall provide WYNIT with written notice of an assignment or factoring of its accounts at least thirty (30) days prior to such assignment or factoring taking legal effect.  Such written notice must include the name and address of the assignee or factor, remit address, the accounts to which the assignment applies (if Supplier has more than one account with WYNIT), the date the assignment is to begin, the terms of the assignment and authorization for WYNIT to disclose account information to the assignee or factor.  Only one assignee or factor and one remit address is allowed on each account, and Supplier may not factor individual invoices.  All payments to an assignee or factor will be subject to all offsets, chargebacks, holdbacks, credits, adjustments and defenses authorized by this Distribution Agreement and Supplier shall make sure that the assignee or factor is aware of the same. Supplier shall defend, indemnify and hold WYNIT harmless from and against any and all lawsuits, claims, demands, actions, damages and liabilities, including reasonable attorney fees and court costs, arising from or related to the assignment or factoring of Supplier's accounts and/or Supplier's failure to abide by the provisions of this Section 3.7.

**4.    RETURNS.**

4.1     Defective / Damaged Products / Product Recalls. WYNIT may return any Products to Supplier that WYNIT and its Customers determine are defective and / or damaged.  Supplier shall immediately refund the full Product purchase price, plus all freight charges for Returns under this section through a credit applied against outstanding invoices or for a cash credit after thirty (30) days if Supplier is in a net debit position with WYNIT.  WYNIT shall ship defective Product at the point that sufficient quantity has accumulated to warrant a shipment. If Supplier recalls any of its Products, because of, but not limited to, defects, revisions or upgrades, WYNIT shall, at Supplier's request, provide reasonable assistance with the recall. Supplier shall pay any costs and expenses incurred by WYNIT in connection with such recall.  Title and risk

**EXHIBIT A**

of loss on the Returned Products shall transfer to Supplier upon delivery of Products at Supplier's docks.

4.2    <u>Overstock and Discontinued Products</u>.  WYNIT may return to Supplier, at Supplier's expense, inventory excess, Customer overstock and discontinued Products for full credit.  Supplier shall provide WYNIT with thirty (30) days advanced written notice of discontinuation of any Product.

4.3    <u>Return Procedures</u>.  Return authorizations must be provided to WYNIT within seven (7) days of request by WYNIT or WYNIT shall consider Supplier's Products as abandoned and Supplier's Return authorization Products will automatically be destroyed at Supplier's expense.  Supplier may authorize WYNIT or its Customers in writing to destroy defective or damaged Products on site in lieu of a return.

4.4    <u>Returns Upon Termination</u>.  Upon expiration or earlier termination of this Distribution Agreement, WYNIT may, at its option, sell the Products in its inventory or request a return authorization.  Supplier is not obligated to accept returns for a period longer than two hundred seventy (270) days following the effective date of termination.

## 5.    TRADEMARKS IN ADVERTISING AND RETAILER PROGRAMS.

5.1    <u>Trademarks</u>.  Supplier acknowledges and agrees that WYNIT and its Customers have the right to utilize Supplier's trade name and any trademarks, service marks and other artwork associated with the Products to identify the origin of the Products in advertising and promotional materials.  With respect to Products made by a third party, Supplier will ensure that WYNIT and its Customers have the right to use the third party's trademarks, service marks and other artwork associated with the Products in advertising and promotional materials.

5.2    <u>Customer Programs and Requirements</u>.  Special Customer marketing programs, pass through funds, and other programs or requirements, in which Supplier may choose to participate, are detailed in each specific Customer addendum attached hereto, which when executed by Supplier will be incorporated into this Distribution Agreement.  Supplier's Products may not be eligible for distribution to certain Customers without participation in such programs or requirements.  Supplier may authorize other pass through marketing and advertising expenditures with certain Customers on a case by case basis which WYNIT agrees to administer.

      (i)    <u>Pass Through Marketing and Advertising Expenditures</u>.  All Advertising and Marketing Fund Expenditures involving Advertisements (collectively "MDF") shall be funded by Supplier and WYNIT and its Customers will utilize Supplier's written guidelines with respect to layout, size, artwork, trademark usage, minimum advertised price ("MAP"), street date and any other miscellaneous Supplier advertising requests.

## 6.    PRODUCT WARRANTIES.

6.1    <u>Product Warranties</u>.  Supplier represents and warrants that: (i) it has good and transferable title to the Products or a valid and enforceable license to distribute the Products; (ii) the Products are new, merchantable, fit for their intended purpose and free from defects; (iii) the Products will perform in conformity with specifications and documentation supplied by Supplier, including, without limitation, a warranty statement provided for the benefit of End Users that is generally consistent with or superior to industry standards; (iv) the Products or their use do not infringe any patents, copyrights, trademarks, trade secrets or any other intellectual property rights of any third parties; (v) there are no suits or proceedings pending or threatened which allege an infringement of such proprietary rights; (vi) the Products have not been manufactured using child, slave or prison labor; (vii) the Products, if electrical, comply with the requirements and bear the seal of Underwriters Laboratories, Inc. (UL) and/or Electronic Testing Labs (ETL); (viii) Supplier has provided WYNIT with the correct customs commodity codes for the Products under the international Harmonized Commodity Description and Coding System (HS) and the correct freight codes under the National Motor Freight Classification tariff; and (ix) the Products comply in all respects with all applicable laws and regulations pertaining to the design, manufacture, packaging, labeling, testing, importation and exportation of the Products, including, without limitation, the certification, labeling and testing requirements of the Consumer Product Safety Improvement Act of 2008 ("CPSIA").  Supplier shall identify all Products that qualify as children's products or are otherwise subject to CPSIA on Exhibit B attached hereto and hereby incorporated herein and shall update Exhibit B throughout the term if new children's products are added.

## EXHIBIT A

7.  **INDEMNIFICATION.**

7.1  Supplier's Indemnification.  Supplier shall be solely responsible for the design, development, supply, production and performance of the Products.  Supplier agrees to defend, indemnify and hold harmless WYNIT and its Customers from and against any and all third party claims, suits, demands, subpoenas, actions and proceedings, liabilities, judgments, penalties, losses, damages, reasonable attorneys' fees and other costs and expenses ("Claim") that may result, in whole or in part, from: (i) any infringement, or any claim of infringement, of any patent, trademark, copyright, trade secret or other proprietary right with respect to the Products; (ii) any warranty claim with respect to the Products or any breach by Supplier of this Distribution Agreement; (iii) any dispute between Supplier and any third party with respect to the Products; and (iv) any injury or damage, including, but not limited to, any personal or bodily injury or property damage, arising out of or resulting in any way from any defective Products.

7.2  WYNIT's Indemnification.  WYNIT agrees to defend, indemnify and hold harmless Supplier from and against any and all Claims that may result, in whole or in part, from: (i) any material breach of this Distribution Agreement by WYNIT, and (ii) any violation of laws in connection with the sale of the Products by WYNIT.

7.3  Insurance. Supplier shall purchase and maintain insurance from an insurance company with an AM Best A- or better for the following types of coverage and limits of liability: (i) Commercial general liability "CGL" coverage with limits of insurance of not less than $1,000,000 each occurrence and $2,000,000 annual aggregate. If the CGL coverage contains a general aggregate limit, such general aggregate shall apply separately to each project. CGL coverage shall be written on ISO occurrence form CG 00 01 (1093) or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury. WYNIT Distribution, LLC and WD WYNIT Distribution, LLC shall be included as additional insured for claims allegedly arising out of the scope of this Agreement. Coverage for WYNIT shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insureds. (ii). (iii) Workers compensation and employers liability, statutory limits apply. (iv) Product recall coverage with limits at least $100, 000 aggregate. The policy shall cover government mandate recall and product recall liability coverage.-(v) Automobile insurance limits must be at least $1,000,000. Automobile coverage must include WD as additional insureds on the CGL.

Supplier by signing below agrees and acknowledges the foregoing of WYNIT's distribution requirements.

**ELEVATION LAB, INC.**

By: _____

Name: Tom Floyd

Title: Secretary

Date: June 11, 2015

**WYNIT DISTRIBUTION, LLC**

By: _____

Name: Randy Saputo

Title: Chief Financial Officer

Date:  June 11, 2015

**EXHIBIT A**

**EXHIBIT A**
**TO THE**
**DISTRIBUTION AGREEMENT**
**BETWEEN**
**WYNIT DISTRIBUTION, LLC**
**AND**
**ELEVATION LAB, INC. ("SUPPLIER")**

**GOLD RESELLERS**

As of the Effective Date:

APPLE, APPLE.COM, APPLE CANADA, APPLE.CA

WYNIT's Gold Resellers trade names, brand names and websites listed above, is in representation of the legal entities of each Gold Resellers.

Gold Resellers may be added to the Agreement from time to time, and this Exhibit A will be deemed to be amended to reflect such addition, upon Supplier's authorization to WYNIT to set-up Products with any such new Customer.  Additional Gold Resellers may require different payment terms or other provisions.

**EXHIBIT A**

**EXHIBIT B**
**TO THE**
**DISTRIBUTION AGREEMENT**
**BETWEEN**
**WYNIT DISTRIBUTION, LLC**
**AND**
**ELEVATION LAB, INC. ("SUPPLIER")**

**CPSIA COMPLIANCE**

List all Products designated or otherwise intended for use primarily by children under 12 years of age or are otherwise subject to the CPSIA:

**NONE**

Describe how Supplier will make available to WYNIT and Customers the CPSIA Certificate of Compliance for the above Products (note either a hard copy of the Certificate(s) of Compliance for the listed Product(s) must be provided with each shipment and/or electronic versions must be accessible online and the website must be designated):

**N/A**

### CANADIAN ADDENDUM
### TO THE
### DISTRIBUTION AGREEMENT
### BETWEEN
### WYNIT DISTRIBUTION, LLC
### AND
### ELEVATION LAB, INC. ("SUPPLIER")

Supplier, by its signature below, desires to have its Products distributed to and sold to WYNIT's Customers located in Canada and which requires Supplier's agreement to the following Canada distribution provisions.

## CANADA IMPORT CHARGES

All Products for distribution in Canada must be delivered by Supplier to WYNIT's Canadian facility in accordance with one of the two alternative delivery terms as selected by Supplier below:

_____ DDP (Delivered Duty Paid) 450 Export Boulevard, Unit A, Mississauga, Ontario, L5S 2A4 Canada, Incoterms® 2010. Supplier is the importer of record, pays all import tariffs, customs brokerage fees and duties directly, and is responsible for all freight expenses and risk of loss during transit.

____X___ DAP (Delivered At Place) 450 Export Boulevard, Unit A, Mississauga, Ontario, L5S 2A4 Canada, Incoterms® 2010. Supplier is responsible for all freight expenses and risk of loss during transit. WYNIT is the importer of record and pays all import tariffs, customs brokerage fees and duties, however, Supplier agrees to reimburse WYNIT for all such tariffs, fees and duties paid, and WYNIT will issue chargebacks to Supplier for the same.

For all Products returned to Supplier from Canada, Supplier shall be responsible for freight expenses and any tariffs, customs brokerage fees and tariffs charged on the return shipments. WYNIT will issue Supplier chargebacks for the applicable freight expense and for all such tariffs, fees and duties paid.

## DOLLAR PARITY PROGRAM

As most Canadian Customers pay WYNIT in Canadian dollars ("CAD"), Supplier agrees to the following retroactive adjustment to WYNIT's purchase price of the Products in U.S. dollars ("USD") to adjust for fluctuations in the Canadian exchange rate:

1. This adjustment applies to all Products sold by WYNIT to Canadian Customers in Canadian dollars without any Canadian exchange rate adjustment.

2. The "Foreign Exchange Rate" means the daily exchange rate as determined Yahoo Finance Currencies Center and published on its website at: http://finance.yahoo.com.currency-investing/majors (rounded to four decimal places).

3. WYNIT's purchase price for its sales of the applicable Products each month (net of returns and authorized destroy in fields) will be adjusted retroactively after the end of each month to reflect the increase or decrease, as determined by the Foreign Exchange Rate on the date of invoice for a sale to a Customer, for a return, or for an approved destroy in field. All Foreign Exchange increases or decreases will be passed through to the Supplier. In the case of a decrease of the USD to CAD exchange rate, WYNIT will issue a credit to Supplier for the difference, and, in the case of an increase, WYNIT will issue a chargeback to Supplier for the difference.

Supplier may opt out of this Addendum upon sixty (60) days prior written notice to WYNIT. Supplier understands that its Products will no longer be eligible for distribution to Canadian Customers by WYNIT if this addendum is terminated.

Supplier by signing below agrees to the foregoing Canadian distribution requirements.

**ELEVATION LAB, INC.**

By: _____

Name: Tom Floyd

Title: Secretary

Date: June 11, 2015

**WYNIT DISTRIBUTION, LLC**

By: _____

Name: Randy Saputo

Title: Chief Financial Officer

Date: June 11, 2015

**EXHIBIT A**

**APPLE ADDENDUM
TO THE
DISTRIBUTION AGREEMENT
BETWEEN
WYNIT DISTRIBUTION, LLC
AND
ELEVATION LAB, INC. ("SUPPLIER")**

WYNIT's distribution agreement with Apple, Inc. and Apple Canada, Inc. (collectively, "**Apple**") requires us to obtain from our suppliers specific representations with respect to the Products provided to WYNIT for resale to Apple.  Supplier, by its signature below, desires to have its Products distributed to and sold by Apple and therefore agrees as follows:

1. Supplier hereby represents and warrants to WYNIT and to Apple that (i) all components or parts used in the Products will be new; (ii) the Products are identical to others provided by Supplier, if any, under the same product name or Supplier's SKU; (iii) neither the Products nor any promotional materials will contain any obscene, defamatory or libelous material, or violate any right of privacy or publicity; (iv) the Products are safe for any use consistent with the Supplier's specifications, including, without limitation, use on or in conjunction with Apple products; (v) the Products will conform to Supplier's specifications, Product packaging and in-box materials, and promotional materials, and will be free of defects for the period specified in Supplier's end-user warranty; (vi) if applicable, the Products will be certified as Class B digital devices in compliance with US Federal Communications Commission and other applicable rules; (vii) the Products are packaged and labeled in compliance with all applicable Canadian federal and provincial laws; (viii) the Products are  properly marked to show country of origin in compliance with US  Federal Trade Commission and the Canada Standards Association and other applicable rules; and (ix) the Products are manufactured and supplied in full compliance with the Apple Supplier Code of Conduct available at http://www.apple.com/supplierresponsibility/code-of-conduct/.

2. Supplier further represents and warrants to WYNIT and to Apple that all Products will function in accordance with Supplier's specifications and end-user documentation when used on or in conjunction with all Apple products then shipping, and will not interfere with the normal operation of hardware or software on such systems.  If Apple requests, Supplier will, at Supplier's expense, run such tests as Apple may reasonably prescribe, or assist Apple in doing so, in order to verify that the Products comply fully with this warranty.  If Supplier becomes aware that any Product does not fully comply with this warranty, Supplier will immediately notify Apple, work with Apple to expeditiously resolve the incompatibility and promptly repair or replace, at Supplier's expense, any incompatible Products purchased by end-users.  Apple may return any incompatible Products to WYNIT at Supplier's expense.

3. Supplier further represents and warrants to WYNIT and to Apple that the use, distribution, sale, display and performance of Products, packaging and promotional materials will not infringe any patent, copyright, trademark, trade secret, mask work right or other proprietary right of any third party.  If Supplier becomes aware of any such claim, Supplier will promptly notify WYNIT, and if Supplier is not able to replace, modify, or procure the right for Apple to continue to use, distribute, sell, display or perform the affected Product, materials or packaging, within thirty days of such notice, Supplier will promptly authorize the return at Supplier's expense of all such affected Products.

4. Supplier agrees to defend and indemnify WYNIT and Apple from and against any claims, fines, penalties, expenses or other damages that may arise if Supplier's Products do not comply with the foregoing representations and warranties.

5. WYNIT is unable to include your Products in those provided to Apple without your express agreement to the foregoing.

**ELEVATION LAB, INC.**

By:_____
Name: Tom Floyd
Title: Secretary
Date: June 11, 2015

**WYNIT DISTRIBUTION, LLC**

By:_____
Name: Randy Saputo
Title: Chief Financial Officer
Date: June 11, 2015

WYNIT_DA                                    A- 12 -                              ELEVATIONLAB_ID

**EXHIBIT A**

**THIS CANADIAN ADDENDUM IS TO SUPERSEDE AND REPLACE ANY PRIOR CANADIAN ADDENDUMS SIGNED BETWEEN THE PARTIES**

<u>**CANADIAN ADDENDUM**</u>
**TO THE**
**DISTRIBUTION AGREEMENT**
**BETWEEN**
**WYNIT DISTRIBUTION, LLC**
**AND**

**("SUPPLIER")** ELEVATION LAB, INC.

WYNIT's distribution of Supplier's Products into Canada requires WYNIT to obtain from its Suppliers, by its signature below, Supplier's acknowledgement and approval to have its Products distributed and sold to WYNIT's Customers located in Canada (**"Canada Addendum"**). Therefore, Supplier agrees to the following Canadian distribution terms and conditions.

1. <u>**CANADA SHIPMENT AND DELIVERY OPTIONS:**</u>

Supplier's Products for distribution by WYNIT into Canada are to be shipped and delivered to WYNIT's Canadian facility in accordance with one of the two alternative delivery terms as selected by the Supplier below:

a. <u>**CHOOSE ONE:**</u>

☐ **DDP (Delivered Duty Paid)** 450 Export Boulevard, Unit A, Mississauga, Ontario, L5S 2A4 Canada or such Canadian destination as designated on the applicable Purchase Order, Incoterms® 2010. Supplier is the importer of record, pays all import tariffs, goods and services taxes and/or harmonized sales taxes, customs brokerage fees and duties directly, and is responsible for all freight expenses and other charges associated with the risks and costs of delivering the goods including risk of loss during transit.

☑ **DAP (Delivered At Place)** 450 Export Boulevard, Unit A, Mississauga, Ontario, L5S 2A4 Canada or such Canadian destination as designated on the applicable Purchase Order, Incoterms® 2010. Supplier is responsible for all freight expenses and risk of loss during transit. WYNIT is the importer of record and pays all import tariffs, goods and services taxes and/or harmonized sales taxes, customs brokerage fees and duties and other charges associated with the costs of delivering the goods; however, Supplier agrees to reimburse WYNIT for all such tariffs, fees, duties and any other charges plus an additional eighty-five US Dollar ($85.00) per shipment administrative fee. WYNIT will issue chargebacks to Supplier for the applicable charges.

b. <u>**Canada Returns.**</u> For all Products returned to Supplier from Canada, WYNIT will ship to Supplier with the delivery terms EXW (Ex Works, Incoterms® 2010). Supplier is the importer of record, pays all import tariffs, customs brokerage fees and duties, and is responsible for all freight expenses and risk of loss during transit on the return shipments. WYNIT will issue chargebacks to Supplier for the applicable charges.

2. <u>**CANADA CURRENCY OPTIONS:**</u>

As WYNIT's Canadian Customers pay WYNIT in Canadian Dollars (**"CAD"**), all Product sold to WYNIT's Canadian affiliate, WD Navarre Canada ULC, is subject to one of the two alternative currency options as selected below by Supplier:



THIS CANADIAN ADDENDUM IS TO SUPERSEDE AND REPLACE ANY PRIOR CANADIAN ADDENDUMS SIGNED BETWEEN THE
PARTIES

a. **CHOOSE ONE:**

☐ **Shipping Products to Canada in Canadian Dollar Currency.** WYNIT and Supplier agree to transact all Purchase Orders and Payment Terms for WYNIT's Canadian business in CAD. Supplier shall ship and sell the Products directly to WYNIT's Canadian affiliate, WD Navarre Canada ULC, and receive payment for those sales in CAD pursuant to the Payment Term Section of the Distribution Agreement.

☑ **Shipping Products to Canada in US Dollar Currency.** If Supplier is unable to sell Product to WYNIT in CAD and chooses to sell Product to WYNIT US dollars (**"USD"**) or if Supplier sells Product to WYNIT for WYNIT's subsequent exportation and sale of the Product to its affiliate in Canada, WD Navarre Canada, ULC, Supplier agrees to give WYNIT a three percent (3%) exchange rate management fee. This fee will be charged back on a monthly basis on all Product invoiced to Customers to cover WYNIT's additional costs related to foreign currency fluctuations.

3. **Transfers from US Warehouse to Canada Warehouse.** Additionally, if Supplier approves Product to be transferred from WYNIT's US warehouse to its affiliate in Canada, WD Navarre Canada ULC, Supplier agrees to pay freight, duties, import tariffs, and customs brokerage fees incurred during the transfer.

4. **Entire Agreement.** This Canadian Addendum to the Distribution Agreement between the parties constitutes the entire agreement and understanding between the parties concerning the subject matter hereof and supersede all prior and contemporaneous representations, agreements, understandings, proposals and communications between the parties, whether written or oral.

5. **Conflict.** Both parties agree that to the extent there are any terms contained in this Canadian Addendum related to the subject matter that vary and conflict with the terms of the Distribution Agreement, then the terms set forth in this Canadian Addendum will govern.

6. **Termination.** Either party may terminate this Canadian Addendum upon sixty (60) days advance written notice to the other party. Supplier understands that Supplier's Products will no longer be eligible for distribution in Canada if the Canada Addendum is terminated for any reason.

7. **Survival.** The terms and conditions in this Canadian Addendum shall survive the expiration or termination of this Canadian Addendum where such survival is necessary to effectuate the intent of such terms and conditions.

The start date of this Canada Addendum shall commence on the first date of the month after the Canada Addendum has been fully executed between the parties.

Supplier by signing below agrees to the foregoing Canadian distribution requirements.

SUPPLIER: ELEVATION LAB, INC.

By: _____

Name: Tom Floyd

Title: COO

Date: February 7, 2016

WYNIT DISTRIBUTION, LLC

By: _____

Name: Bill Cave

Title: Chief Financial Officer

Date: February 7, 2016




| Comp | AcGr | Vendor | Vendor name | Invoice No | Reference Number | Item Text | Doc Date | Net due date | Baseline Payment Date | DT | Gross Amount | CURR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1700090735 A | OPVC:1014449047 | | 1/3/2017 | 1/3/2017 | 1/3/2017 | KG | 23.21 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1700090759 B | 3%EX RATE MGMT | OCT 3% EX MANAGEMENT FEE | 12/31/2016 | 12/31/2016 | 12/31/2016 | KG | 89.23 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1700091263 | CNTC CN SHP FEES | CUSTOMS CN FEES OCT-DEC | 1/27/2017 | 1/27/2017 | 1/27/2017 | KG | 178.58 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1700094112 C | RTV FREIGHT CB | NOV15 - JUL17 Inbound FR CB | 8/17/2017 | 8/17/2017 | 8/17/2017 | KG | 3,973.79 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901374883 D | DBVC | | 1/5/2017 | 1/5/2017 | 1/5/2017 | KR | (728.10) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901375418 E | RDBV | | 1/11/2017 | 1/11/2017 | 1/11/2017 | KR | 80.96 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901377138 F | DBVC | | 2/3/2017 | 2/3/2017 | 2/3/2017 | KR | (420.88) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901377559 G | RDBV | | 2/10/2017 | 2/10/2017 | 2/10/2017 | KR | 26.39 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901379669 H | DBVC | | 3/7/2017 | 3/7/2017 | 3/7/2017 | KR | (159.56) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901381387 I | DBVC | | 4/5/2017 | 4/5/2017 | 4/5/2017 | KR | (130.21) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901381483 J | DBVC | | 4/5/2017 | 4/5/2017 | 4/5/2017 | KR | (0.87) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901383875 K | DBVC | | 5/3/2017 | 5/3/2017 | 5/3/2017 | KR | (105.71) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901386344 L | DBVC | | 6/6/2017 | 6/6/2017 | 6/6/2017 | KR | (75.01) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901388428 M | DBVC | | 7/6/2017 | 7/6/2017 | 7/6/2017 | KR | (159.37) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901390338 N | DBVC | | 8/7/2017 | 8/7/2017 | 8/7/2017 | KR | (28.53) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 1901391614 O | DBVC | | 9/5/2017 | 9/5/2017 | 9/5/2017 | KR | (22.26) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100132694 Invoice | 1237 | 3202667/3202668 | 11/5/2015 | 1/15/2016 | 11/16/2015 | RE | (116,934.00) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100133727 R1 | RMA#3222238/ | | 1/3/2017 | 1/3/2017 | 1/3/2017 | RE | 66,096.00 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100133733 R2 | RMA#3222332/ | | 1/3/2017 | 1/3/2017 | 1/3/2017 | RE | 28,527.00 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100134891 R3 | RMA#3223179/ | | 2/9/2017 | 2/9/2017 | 2/9/2017 | RE | 19,313.36 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100135361 R4 | RMA#3222239/ | | 2/21/2017 | 2/14/2017 | 2/14/2017 | RE | 2,754.00 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100135804 R5 | RMA # RAR 32 | | 3/7/2017 | 3/7/2017 | 3/7/2017 | RE | 2,887.24 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100135805 R6 | RMA#10416/RE | | 3/7/2017 | 3/7/2017 | 3/7/2017 | RE | 1,151.48 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100136041 R7 | RMA#3223912/ | | 3/14/2017 | 3/14/2017 | 3/14/2017 | RE | 23,133.60 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100136610 Invoice | 1341 | 3217647 | 9/14/2016 | 11/22/2016 | 9/23/2016 | RE | (661.20) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100136611 Invoice | 2063 | 3224177 | 2/10/2017 | 4/24/2017 | 2/23/2017 | RE | (550.80) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100136612 Invoice | 2064 | 3224276 | 2/13/2017 | 4/18/2017 | 2/17/2017 | RE | (735.84) | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100136895 R8 | CRAR1350/RET | | 4/10/2017 | 11/7/2016 | 11/7/2016 | RE | 11,016.00 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | 5100137889 R9 | RMA#3227487/ | | 5/5/2017 | 5/5/2017 | 5/5/2017 | RE | 925.56 | USD |
| 1200 | ACCY | 8017 | ELEVATION LAB INC | Invoice | 5000300762 | 3226923 | 4/25/2017 | | | WE | (550.80) | USD |
| Status Open | | 8017 | | | | | | | | | 38,917.26 | |

**EXHIBIT B**